In re PITTSBURGH HOTELS COR-
PORATION.
No. 19188.

District Court, W. D. Pennsylvania.
Nov. 2, 1936.

On Reargument Dec. 1, 1936.

Patterson, Crawford, Areneberg & Dunn, of Pittsburgh, Pa., for Pittsburgh Hotels Corporation.

John E. Evans, Sr., and John E. Evans, Jr., both of Pittsburgh, Pa., for Bondholders' Protective Committee, Pittsburgh Hotels Corporation, 6 per cent. Serial Mortgage Gold Bonds.

Pugliese & Evans, of Pittsburgh, Pa., for Protective Committee for Pittsburgh Hotels Corporation, 15-Year 6½ per cent. Sinking Fund Gold Debentures.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for Bondholders' Protective Committee for the Holders of First Mortgage 5½ per cent. Sinking Fund Gold Bonds of the Pittsburgh Hotels Corporation.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for the Union Trust Co., Trustee under the First Mortgage Bond Issue.

Duff, Scott & Smith, of Pittsburgh, Pa., for Property Management, Inc., representing holders of First Mortgage 5½ per cent. Sinking Fund Gold Bonds.

GIBSON, District Judge.

This proceeding under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207) having reached the stage where the court was about to be required to send out to parties in interest a proposed scheme of reorganization, counsel for the First Mortgage Bondholders' Committee prayed the appointment of several individuals to appraise the properties of the debtor. To that petition counsel for the debtor, who also appeared for bondholders and creditors junior to the First Mortgage Bondholders, objected and suggested the appointment of the American Appraisal Company instead of any individual appraisers. Counsel for the First Mortgage Bondholders' Committee consenting to this suggestion, the court appointed that company.

In due time the American Appraisal Company filed its report wherein the real and personal property of the debtor was valued at $9,275,000. Thereupon the court issued a rule upon all parties in interest to show cause why said report should not be confirmed. Answers to the rule having been filed, an extensive hearing followed.

Persons actively engaged in the appraisal on behalf of the American Appraisal Company were examined at length, and a number of other witnesses were called by the First Mortgage Bondholders' Committee in general support of the appraisal report valuation of $9,275,000. Counsel for the debtor and for junior bondholders and creditors called a number of other witnesses to establish the contention that the appraisal report disclosed a valuation much less than the actual value of the properties.

█ It definitely appeared, at the times of both hearing and report, that no purchaser for the properties was in the offing, ready and willing to take them over at a fair valuation, and that no recent sales of property in the vicinity had been made which would aid in the establishment of a market value for them. This being so, the Appraisal Company very properly approached its problem of determining the fair market value of the properties from two angles. The first was from the standpoint of a capitalization of the income, and the second from a consideration of the cost of reproduction less depreciation.

█ The witnesses called in support of the findings of the Appraisal Company as to use value differed very materially from the estimates of those called in opposition to it. Both parties agreed, however, that the earning capacity of a hotel was to be measured by its average room rentals. So agreeing, each set of witnesses entered the field of prophecy. For the year 1935, the William Penn Hotel had rented a daily average of 31.7 per cent. of its rooms, and in a month shortly before the hearing had averaged 32.8 per cent. The representative of the Appraisal Company predicted that the hotel would be able, within a year or so, to rent daily 45 per cent. of its rooms. His calculation, based upon this prediction of rentals, at the average of $4.54 per room—$0.54 greater than the present average rate—showed a profit for the hotel, in the future, of $450,000 per year. To this sum he added $110,000 per year from other sources, estimating a total yearly income of $560,000 available for bond interest and depreciation. Mr. Conner, who testified for respondents, was much more optimistic in his prophecy. His calculation was based upon a 55 per cent. occupancy at $5.40 per day. With this increase of occupancy and room rental he estimates a yearly income of $1,011,000 for the William Penn Hotel, and a valuation of $14,630,000 for all the properties. Other witnesses called by the respondents made no prediction of any specific percentage of occupancy, but did forecast a coming era of prosperity and a consequent increase over the present occupancy (31.8 per cent.) of the William Penn Hotel.

It will be noted that all the witnesses who were called to establish a use value, with one possible exception, predicted increase of prosperity in greater or less degree, none basing their estimates upon the situation of the hotel as it existed at the date of hearing or shortly prior thereto. It was practically admitted that the use value of the debtor's property, upon the basis of the income of the hotel about the time of hearing, was not greater, if so great, as the amount found by the American Appraisal Company. And yet the situation at the time of hearing should not be entirely ignored. Prophets of woe exist, as well as prophets of weal, and they foretell labor troubles, increased cost of food supplies, increase of taxes, and other matters tending to reduce materially the hotel income. The income of the William Penn Hotel for the year 1935 was $143,849, and the estimated future income was fixed at $560,000 per year by the American Appraisal Company. The estimated future income represents as optimistic an increase as was reasonably possible under all the evidence.

The Appraisal Company, in its estimate of the reproduction cost of the hotels, less depreciation, found the cost of reproducing all of the properties (including land, buildings and furnishing) as $11,418,968. Some witnesses, called by the First Mortgage Bondholders' Committee, reduced this estimate. Among them was Mr. A. R. Reed, who, by reason of his experience in the erection of large buildings in Pittsburgh, is entitled to speak with considerable authority. He estimated the reproduction cost of the William Penn Hotel at a sum $1,000,000 less than the estimate shown by the Appraisal Company's report. Other witnesses, called by

the respondents, increased the Appraisal Company's reproduction estimate. Mr. Wilbur arrived at a reproduction cost for the William Penn Hotel of $10,989,960, some $770,000 greater than the Appraisal Company's estimate. Mr. C. F. Eames estimated the reproduction cost of the William Penn Hotel at $11,713,108. He made no valuation of his own, but took the American Appraisal Company's costs and subjected them to certain increases. In the place of the 1935 costs, he averaged the cost for the period of 1923 to 1935, omitting the low years of 1932 and 1933, thus adding 8 per cent. to the cost. He also fixed the indirect costs (architects' fees, etc.) at 16 per cent. of the direct costs. His increase in respect to this item is a duplication of the Appraisal Company's estimate, as that company had included architects' fees of 6 per cent. under the heading of direct costs, and had added as indirect costs 9.2 per cent. of the direct costs. Mr. Eames also criticized the depreciation shown by the report. He asserted that the depreciation shown by the report was excessive and should not have appeared as greater than $560,965. The old part of the William Penn being twenty years old, and the plumbing bad, and the addition being seven years old, this contention cannot be accepted. Mr. Eames, adopting Mr. Conner's prophecy of future earnings, estimated the use value of the properties to be $16,752,000. In view of the small experience of the witness with respect to hotel properties and operations, and his acceptance of Mr. Conner's very high estimate of earnings as a basis, we feel that this opinion cannot be adopted.

The court, after a consideration of the report of the American Appraisal Company and the testimony taken upon hearing on exceptions thereto, is of opinion that it is required to adopt the report, and find the fair market value of the properties of the Pittsburgh Hotels Corporation to be $9,275,000. This amount is less than the cost of replacement less depreciation. The reproduction cost was considered, as it should have been, by the Appraisal Company, but was not adopted as the market value. Under the conditions prevailing in the instant case, the Appraisal Company was correct in its rejection of the reproduction cost. The properties can be used for no other purpose than as hotels. As has been stated, no present market for the properties exists. We are required to find an amount which

would justify any person in purchasing them. Such a purchaser would be interested in but two questions. The first, what income could be obtained from the properties; and, second, the capitalized value of that income. No one would buy the properties at a greater sum than this capitalized value.

In so far as the present inquiry is concerned, it appears of no great moment whether the use value or the reproduction cost less depreciation be adopted, as both are less in amount than the sums due upon the taxes in arrear and upon the first mortgage bonds with the interest due thereon. By the debtor's report on proofs of claims, it is admitted that the Hotel Company owed for taxes in arrear on May 1, 1936, the sum of $518,740. On April 24, 1936, it owed, on debt and interest upon its first mortgage 5½ per cent. sinking fund gold bonds, the sum of $12,180,111; upon its second mortgage 6 per cent. gold bonds, on May 1, 1936, the sum of $2,655,133; and upon its 15-year 6½ per cent. sinking fund gold debentures, on June 1, 1936, the sum of $3,375,000. The amounts due other unsecured creditors, on September 1, 1936, were $676,237.44. From this it will appear, not only that the debtor is insolvent, but that its property at a fair valuation is not sufficient to pay taxes in arrear and the amounts due, in debt and interest, upon the first mortgage bonds.

The rule to show cause will be made absolute and the report of the American Appraisal Company confirmed.

### On Petition for Reargument and for Specific Findings.

The American Appraisal Company was appointed by the court to appraise the properties of the debtor and filed its report. Exceptions were filed to the report on behalf of the debtor and of creditors inferior to the first mortgage bondholders. An extensive hearing followed, at which a number of witnesses were called, some in opposition to the report and others in support of it. On November 2, 1936, an order confirming the report was filed, wherein the value of the debtor's properties was found to be somewhat less than the indebtedness to the first mortgage bondholders. Accompanying the order was a memorandum opinion wherein the court endeavored to state its position in respect to the main contentions involved.

At the conclusion of the hearing upon the report none of the counsel engaged filed any request upon the court for any specific findings of fact or conclusions of law, but on November 30, 1936, two days before the expiration of the period in which the order might be reviewed, attorneys for the debtor and for the Bondholders' Protective Committee for Pittsburgh Hotels Corporation, 6 per cent. Serial Mortgage Gold Bonds, and for the Protective Committee for Pittsburgh Hotels Corporation Fifteen-Year 6½ per cent. Sinking Fund Gold Debentures, filed a petition wherein, after reciting a number of alleged errors, they joined in praying the court to grant an oral reargument of the matter, and to make specific findings as follows:

"1. That the Court will make a specific finding with respect to the propriety of determining depreciation by means of estimating service lives rather than the recognized method of observing condition.

"2. That the Court will make a specific finding with respect to the propriety of determining cost of reproduction new at spot prices for material and labor, as of October 1, 1935, rather than by the use of average prices over a period.

"3. That the Court make a specific finding with respect to the propriety of estimating prospective earnings and cost of reproduction new for a hypothetical hotel of one thousand (1000) rooms, instead of for the existing William Penn Hotel containing fourteen hundred (1400) rooms."

The desirability of a reargument does not appear. When the hearing upon the report ended, all counsel waived an oral argument, agreeing to submit the matter upon written arguments. Briefs were exchanged, reply briefs filed, and replies to the reply briefs. The court endeavored to give these extensive arguments careful attention, and does not feel that so valuable a new point of view would appear as to justify interference with jury trials and further delay of the main proceeding, already long drawn out.

■ The first request for specific finding is not happily worded. It seems to confine the court to an unadmitted position, namely, that the method of observing condition is generally recognized as the only proper method of determining depreciation, and that such method is necessarily opposed to any consideration of service life. In the present appraisal both service life and condition were considered—and properly so.

■ The second request arises from a variance in the method of the Appraisal Company engineer and that of the engineer called by exceptants to the report in calculating reconstruction cost. The former used present prices, while the latter took the average prices of labor and materials for a number of years. He included a number of the boom years prior to the years of financial stringency, thus increasing the cost of reconstruction. In view of the fact that the matter for the determination of the court was the present value of the hotel properties, we are of opinion that it was quite proper to consider present, rather than past, prices of materials and labor in determining reconstruction cost as an element of value.

The third request presents another point of controversy between engineers. The American Appraisal Company engineer held, from his investigation of the past, present, and future occupancy history of the William Penn Hotel (so far as he could predict it), that a 1000-room hotel would return a larger income than the present one of 1400 rooms, and that such a hotel should be considered in determining reconstruction cost. Engineers called by the exceptants, stressing the future rather than the past or present, were of a contrary opinion. The court is of opinion that the finding of the American Appraisal Company is correct in this respect, as well as in the use of present prices in determining reproduction cost.

■ But while of that opinion, it nevertheless does not file numbered specific findings of fact and conclusions of law, as it is felt that such action is not required under Equity Rule 70½, 28 U.S.C.A. following section 723. That rule requires the court of first instance in deciding suits in equity to state specific findings of fact and conclusions of law. It is true, in bankruptcy proceedings equitable principles are to be applied, but bankruptcy actions are not suits in equity as contemplated by the rule. The finding in the instant case was not a final decision, but only a definite determination of a single fact necessarily determined in the course of the proceeding. In itself it is a specific finding of fact. The only conclusion of law which might be stated would be a declaration that the court had power to find the fact—certainly a necessary accompanier of the order.